## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| **SHELLY HURLEY,**<br>*Plaintiff*,<br><br>v.<br><br>**HEALTH CARE SERVICE CORPORATION d/b/a/ BLUE CROSS BLUE SHIELD OF TEXAS,**<br>*Defendant*. | §<br>§<br>§<br>§<br>§  CIVIL ACTION NO. 4:20-cv-962<br>§<br>§<br>§<br>§<br>§ |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Shelly Hurley ("Hurley") and files this, her Original Complaint and Jury Demand against Defendant Health Care Service Corporation d/b/a/ Blue Cross Blue Shield of Texas ("BCBS" or "Defendant") concerning discrimination and retaliation arising under the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Texas Commission on Human Rights Act, TEX. LAB. CODE § 21.001, *et seq*. In support of Plaintiff's claims, she respectfully states as follows:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343(a)(4), and 42 U.S.C. § 2000e-5(f)(3). The Court has supplemental jurisdiction over Plaintiff's claims under the Texas Labor Code and Texas Law because those claims are so related to the claims in the action with the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367.

2. Venue is proper in this district under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5.

## II. PARTIES

3. Plaintiff was born Mr. Jeremy Hurley, but identifies her gender as female, legally changing her name and gender marker to Shelly Hurley—female, on or about April 6, 2017.

4. Defendant Health Care Service Corporation d/b/a/ Blue Cross Blue Shield of Texas ("BCBS" or "Defendant") is a presumed foreign corporation that is not properly registered and doing business in the state of Texas, and without a registered agent for service, but maintains offices at 1001 E. Lookout Dr., Richardson, Texas 75082.

## III.  FACTUAL BACKGROUND

5. Ms. Hurley became employed by BCBS on or about September 3, 2013 as a New Business Coordinator.

6. On or about May 2015, Ms. Hurley was promoted to the position of Marketing Service Representative in the major medical market space, with Ms. Hurley receiving a 7% merit based salary increase.

7. For the duration of her employment, Ms. Hurley always gave her best efforts to the company, receiving merit based salary increases through 2016.

8. On or about January 2016, Ms. Hurley's position was restructured, tasking her with the responsibility of rebuilding and redesigning the fully insured medical market space. Ms. Hurley was selected as the best choice to rebuild a failing market space. The job was previously handled by two-three people.

9. Ms. Shelly Hurley was born Mr. Jeremy Hurley, but identifies her gender as female.

10. On or about May 27, 2016, Ms. Hurley began Hormone Replacement Therapy to start a physical feminization process. Ms. Hurley's transition was not a secret in the workplace.

11. On or about September 26, 2016, Ms. Hurley began Hormone Replacement Therapy (HRT), to start the physical feminization process.

12. On or about October 18, 2016, Ms. Hurley was restructured under manager Sherryl Chadwell and supervisor David Rogers. At that time, Ms. Hurley requested to stay on her current team as Ms. Chadwell had a bad reputation in the company for bullying members of the LGBTQ community until they quit. Ms. Hurley was sent to the new team despite her efforts to remain in her then existing position.

13. On or about early 2017, Ms. Hurley continued her gender transition at work in more noticeable ways, letting her nails grow long, using nail polish, shaping her eye-brows, and wearing more gender neutral clothing.

14. Shortly thereafter, Ms. Hurley specifically told David Rogers that she was Transgender and was working on a full transition from male to female. Mr. Rogers was in shock, then stating that fellow employee Madeline Eibel and her husband Matt would not accept her as they were a "Christian Family," and that Ms. Hurley should prepare to receive backlash from them. Mrs. Eibel sat behind Ms. Hurley while Mr. Eibel sat approximately 20 feet from Ms. Hurley.

15. At the time Ms. Hurley came out to Mr. Rogers she considered him a friend, but Mr. Rogers demeanor would completely change.

16. On or about April 6, 2017, Ms. Hurley was granted a court order from the District Court of Collin County, Texas, Judicial District 469 – Judge Piper McGraw, to change her name from Jeremy Blair Hurley to Shelly Blair Hurley and to change her Gender Marker from male to female.

17. On or about May 1, 2017, Ms. Hurley "came out" Transgender at work via email to her peers, after discussing the matter with HR representative Lori Hughes, Manager Sherryl Chadwell,

and Supervisor David Rogers. Later that month, Ms. Hurley's name was formally changed at Blue Cross, i.e. name plate, internal IM systems, and email signature.

18. Ms. Hurley knew the transition would be difficult in her office, as she heard first hand individuals refer to Caytlin Jenner as a "freak" after she famously transitioned from Bruce Jenner.

19. On or about the first week of June, Ms. Hurley met with Mr. Rogers to inform him that she was going to have surgery related to her transition. Mr. Rogers appeared irritated.

20. On or about June 27, 2017, Ms. Hurley informed Mr. Rogers that she was filing for FMLA leave, as discussed in the previous meeting above, and that she would be out for a few weeks post-surgery.

21. Ms. Hurley received a negative write up about 20 minutes later.

22. On or about June 28, 2017, Ms. Hurley checked into the hospital for her first surgery.

23. On or about July 6, 2017, Ms. Hurley completed Gender Confirmation Surgery (sex change).

24. While out on FMLA, Mr. Rogers threatened Ms. Hurley, informing her that if her FMLA was not approved she would be counted as a "no-show" for work.

25. On or about July 24, 2017, Ms. Hurley underwent a tonsillectomy and adenoidectomy surgery.

26. On or about August 14, 2017, Ms. Hurley returned to work after her Gender Confirmation Surgery. On her first day back, Mr. Rogers instructed Ms. Hurley that she was not allowed to use the individual bathroom downstairs, as it would add a couple minutes extra time to her bathroom breaks. Ms. Hurley ultimately began using the bathroom downstairs as men and women expressed discomfort with Ms. Hurley using their respective bathrooms. After Ms. Hurley began using the individual downstairs bathroom, management began tracking the time

Ms. Hurley was spending using the restroom. Mr. Rogers also reminded Ms. Hurley that she was still on a "write-up," requesting that she sign a revised write-up.

27. After returning from FMLA leave, Ms. Hurley was prevented from being added to the Work From Home ("WFH") list, while others on her team were allowed this opportunity.

28. On or about October 10, 2017, Ms. Hurley was scheduled for the first part of her facial feminization surgery. With this knowledge in hand, Mr. Rogers and Ms. Chadwell required Ms. Hurley to work until 10pm on the night of October 9, 2017.

29. On or about December 12, 2017, Ms. Hurley underwent female body contouring surgery.

30. Unfortunately, since Ms. Hurley began her transition she has experienced a hostile working environment, including sexual harassment as well as discrimination within the workplace. This discrimination is based on Ms. Hurley not conforming to traditional gender stereotypes. For some employees, this discrimination was manifested through the lens of religious discrimination, i.e. (the Eibel's). The conduct has been severe, pervasive, and Blue-Cross failed to take proper remedial measures to stop the treatment Ms. Hurley has received. On the contrary, Ms. Hurley experienced retaliation for making protected complaints.

31. Ultimately, in 2017, Ms. Hurley complained to Blue-Cross that Mr. Rogers was sexually harassing and discriminating against her. Upon information and belief, the HR "investigation" remained "open" up and until Ms. Hurley's eventual termination.

32. Mr. Roger's discriminatory and harassing behavior resulted in writing Ms. Hurley up for false reasons the day she was leaving for Gender Reassignment Surgery.

33. Mr. Rogers ultimately gave Ms. Hurley a pre-textual performance review in 2017, where Ms. Hurley was issued a performance rating of "2." This review allegedly precluded Ms. Hurley from being considered for an internal promotion to which she had applied.

34. The retaliatory behavior was not limited to the actions of Mr. Rogers. On or about February 14, 2018 – Valentines Day – Ms. Chadwell walked through each row of workers passing out Valentines Day cards and candy. Upon reaching Ms. Hurley's desk, Ms. Chadwell informed her that she did not have a card for her because she must have dropped hers on the floor somewhere.

35. The harassment and hostile environment Ms. Hurley experienced at the hand of Mr. Rogers and Ms. Chadwell caused Ms. Hurley to experience emotional distress.

36. During this timeframe, Ms. Hurley was further denied multiple promotion opportunities, in favor of individuals not holding licenses required for the position.

37. Upon information and belief, two of the women hired instead of Ms. Hurley were ultimately terminated for their inability to pass certification tests required for the job while Ms. Hurley already held the required license.

38. Ms. Hurley ultimately learned that members of the team she was applying for were referring to her as an un-hirable freak because of her transition. Eerily similar to the comments Ms. Hurley had previously heard in regard to Caytlin Jenner.

39. Due to these circumstances, Ms. Hurley filed reports and sought protection from HR representatives Debra Hudson and Chantel Trussell, but to no avail, as they would not shield Ms. Hurley from retaliation for filing her complaints.

40. In responses to Ms. Hurley's complaints, Ms. Chadwell began exhibiting classic retaliatory behavior by a manager; setting different rules and expectations for Ms. Hurley from her peers. Specifically, Ms. Hurley experienced increases in expected productivity levels, scrutinized bathroom breaks, working hours, parking places, and isolation from team activities. Ms.

Chadwell would bully Ms. Hurley on a daily basis, creating a palpably tense working environment for the entire office.

41. On or about July 12, 2018, Ms. Hurley reported another incident of sexual harassment in the workplace to HR, in which a co-worker told her that despite her impending reassignment surgery, Ms. Hurley would still be able to "find ways for [her] to f*** him deep and hard."

42. Ms. Hurley also experienced ongoing and consistent harassment from TeAnn Hilman, who would come up to Ms. Hurley on multiple occasions asking to see her new female gentalia. Ms. Hurley expressed she was uncomfortable with this to Ms. Hilman and HR representatives Debra Hudson and Chantell Trussell. Upon information and belief, Ms. Hilman admitted to portions of the truth, including asking Ms. Hurley about her vagina and it's functionality, later retracting that statement to her only asking to see pictures, but there was no repercussion for Ms. Hilman's actions.

43. Near the end of 2018, fellow employees would tell Ms. Hurley that is was obvious that Mr. Rogers and Ms. Chadwell were "out to get [her]."

44. Ultimately, Blue Cross did just that, terminating Ms. Hurley on or about December 4, 2018 for pretextual reasons.

45. Blue Cross has unlawfully discriminated and retaliated against Ms. Hurley because of her gender, for not comporting to traditional notions of gender stereotypes, and for not comporting with "Christian values," and for reporting these concerns to the company. Blue Cross has failed to remedy this hostile working environment and ultimately terminated Ms. Hurley. All in violation of Title VII and the Texas Labor Code.

46. Plaintiff timely filed an EEOC charge of discrimination and retaliation, which was co-filed with the Texas Workforce Commission Civil Rights Division. Plaintiff received a notice of

case closure from the EEOC on or about December 13, 2020.  This suit is being filed within 90 days of Plaintiff having received notice from the EEOC.  Plaintiff has requested a right to sue letter from the Texas Workforce Commission Civil Rights Division.

### IV. CAUSES OF ACTION

**A.   Gender/Sex Discrimination**

47. Plaintiff re-alleges and incorporates the allegations contained in the Paragraphs above as if restated herein.

48. Defendant's actions as described herein constitute unlawful sex discrimination on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, as amended.

49. As a result of the unlawful discriminatory actions of Defendant, Plaintiff has suffered and will suffer actual damages in the form of lost wages, medical and mental health costs, both past and future, and lost employment benefits, for which she hereby sues.

50. As a further result of Defendants discriminatory and retaliatory actions, Plaintiff has suffered non- pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages, for which she hereby sues.

51. At all times relevant to this action, Defendant acted with malice or reckless indifference to Plaintiff's protected rights, thus entitling Plaintiff to punitive damages.

52. Plaintiff seeks attorneys' fees and costs of suit.

**B.   Hostile Working Environment – Sexual Harassment**

53. Plaintiff re-alleges and incorporates the allegations contained in the Paragraphs above as if restated herein.

54. Defendant subjected Plaintiff to a sexually harassing work environment that unreasonably interfered with her ability to do her job. This sexual harassment included unwanted and unwelcome verbal sexual comments and Defendant's failure to properly remedy their actions.

55. Plaintiff made complaints to human resource professionals.

56. The offensive and unwelcome sexual comments and advances instilled fear and anxiety in Plaintiff.

57. Defendant's actions as described herein constitute unlawful sexual harassment and a hostile working environment in violation of Title VII of the Civil Rights Act of 1964, as amended.

58. As a result of the unlawful discriminatory actions of Defendant as described above, Plaintiff has suffered and will suffer actual damages in the form of lost wages, medical and mental health costs, both past and future, and lost employment benefits, for which she hereby sues.

59. As a result of Defendant's actions, Plaintiff has suffered non-pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages, for which she hereby sues.

60. At all times relevant to this action, Defendant acted with malice or reckless indifference to Plaintiff's protected rights, thus entitling Plaintiff to punitive damages.

61. Plaintiff seeks attorneys' fees and costs of suit.

**C.     Religious Discrimination**

62. Plaintiff realleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

63. Defendant's actions in harassing Plaintiff and treating her less favorably for not comporting with "Christian values," and terminating Plaintiff's employment for not comporting to those

"Christian values," in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* and the Texas Commission on Human Rights Act, TEX. LAB. CODE § 21.001, *et seq*.

64. As a result of Defendant's unlawful actions described above, Plaintiff has incurred lost wages, both past and future, including the value of lost and/or replacement benefits.

65. As a result of Defendant's unlawful religious discrimination, Plaintiff has suffered compensatory damages by reason of future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

66. At all times relevant to this action, Defendant acted with malice or reckless indifference to Plaintiff's federally and state protected rights under Title VII and the Texas Commission on Human Rights Act, TEX. LAB. CODE § 21.001, *et seq*., thus entitling Plaintiff to punitive damages.

67. Additionally, Plaintiff is entitled to receive her attorneys' fees, expert fees, and costs of court.

### D.    Gender and Religious Retaliation

68. Plaintiff realleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

69. As described above, Defendant's actions constitute unlawful retaliation on the basis of Plaintiff's protected activity in violation of 42 U.S.C. §2000e-2(a), Title VII, and the Texas Commission on Human Rights Act, TEX. LAB. CODE § 21.001, *et seq*.  The employment practices complained of above were intentional.

70. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under Title VII and the Texas Labor Code.

71. As a result of Defendant's unlawful retaliation, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

72. As a result of Defendant's retaliation, Plaintiff has suffered non-pecuniary losses including, but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

73. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federal- and state-protected rights.  Plaintiff therefore seeks punitive damages.

74. Additionally, Plaintiff seeks any and all equitable relief necessary to return her to the position that she would have been in but for Defendant's unlawful retaliation.

75. Defendant's actions referenced above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue her state and federal rights in this action. Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of suit under Title VII, 42 U.S.C. § 2000e-5(k), and the Texas Labor Code.

## V. JURY DEMAND

76. Plaintiff hereby demands a jury trial on all issues, claims, actions, and defenses against Defendant.

## VI. PRAYER

WHEREFORE, Plaintiff, respectfully requests that the above-named Defendant be cited to appear in this matter and that, after jury trial by proof, Plaintiff be awarded:

    a.    Judgment against Defendant ordering Defendant to take such other reasonable actions as may be necessary to remedy the effects of Defendant's violation of Title VII, 42 U.S.C. § 2000(e), and the Texas Labor Code;

  b. Judgment against Defendant for lost wages and benefits, both back pay and front pay;

  c. In the alternative to front pay, judgment against Defendant reinstating Plaintiff to her position of employment, equivalent position of employment, or the position of employment she would have enjoyed but for the discrimination, if reinstatement is deemed feasible;

  d. Judgment against Defendant for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

  e. Judgment against Defendant for punitive damages to the extent allowed under the law;

  f. Pre-judgment interest at the appropriate legal rate on all amounts awarded;

  g. Interest after judgment at the appropriate legal rate on all amounts awarded until paid in full;

  h. Judgment against Defendant for Plaintiff's reasonable attorneys' and experts' fees;

  i. Costs of suit; and

  j. Such other and further relief to which Plaintiff may justly be entitled.

Respectfully submitted,        Date: December 18, 2020

               /s/ *Adam S.Greenfield*
               Adam S. Greenfield

               **Cloutman & Greenfield, PLLC**
               3301 Elm Street
               Dallas, Texas 75226
               214.939.9224
               214.939.9229 FAX

               Adam S. Greenfield
               Texas Bar No. 24075494

agreenfield@candglegal.com

*Board Certified in Labor & Employment Law by the Texas Board of Legal Specialization*

**COUNSEL FOR PLAINTIFF**